## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| JAMIE HINES, as administrator of the Estate of Jevonte Romeo Lyons and as surviving parent and heir to the Estate of Jevonte Romeo Lyons, | ) ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v**.** | ) ) | **Civil Action File No:** |
| OFC. WILLIAM JENKINS, SGT. CHRISTOPHER DALE ROBINSON, OFC. JOSH ADAM HOPPER, OFC. GLENN ELLIOT EDWARDS, HON. JOHN MAYNARD, CITY OF WRENS POLICE DEPARTMENT, CITY OF WRENS, JEFFERSON COUNTY SHERIFF'S DEPARTMENT, and JEFFERSON COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY DEMAND** |
| *Defendants.* | | |

## COMPLAINT

Plaintiff Jamie Hines, as surviving parent and administrator of the Estate of decedent Jevonte Romeo Lyons, states and alleges as follows:

## INTRODUCTION

1.

This cause of action arises out of Jevonte Romeo Lyons's death on November 10, 2021, which occurred at approximately 8:39 PM, on Highway GA 4 in Jefferson County, Georgia.

2.

This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Jevonte Lyon's established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against (1) Defendants William Jenkins, Christopher Dale Robinson, Josh Adam Hopper , Glenn Elliot Edwards, and John Maynard , in their respective capacities as duly-certified law enforcement officers employed by the City of Wrens Police Department and the Jefferson County Sheriff's Department ("Defendant Officers"); (2) the City of Wrens Police Department (WPD) and the Jefferson County Sheriff's Office (JCSO) for their respective violations of Jevonte Lyons's right to be free from the use of excessive force and death by shooting, and (3) the City of Wrens and Jefferson County for its unconstitutional policies, customs and practices under *Monell* and its progeny and (4) against the Defendant Officers, the WPD, and the JCSO, for tampering with evidence.

## JURISDICTION AND VENUE

3.

This court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§1983, 1988.

4.

Venue is proper in this court under 28 U.S.C. 1391(b) because a substantial portion of the incident, events, and occurrences giving rise to this action occurred in the Southern District of Georgia.

## THE PARTIES

5.

At all times relevant hereto and until the time of his death on November 10, 2021, decedent Jevonte Lyons was a citizen of the United States, residing in Augusta, Georgia, Richmond County.

6.

Plaintiff Jamie Hines is the mother of Jevonte Lyons and is the Administrator of his Estate, who at all times relevant lived in Augusta, Georgia, Richmond County.

7.

The City of Wrens is and was at all times material hereto a political subdivision of the State of Georgia, organized and existing under the laws of Georgia.

8.

The City of Wrens Police Department is and was at all times material hereto a municipal Georgia police agency, providing the vehicle through which the city of Wrens fulfills its policing functions.

9.

The Jefferson County Sheriff's Office is and was at all times material hereto a Georgia agency, providing the vehicle through which the County fulfills its policing functions.

10.

Jefferson County is and was at all times material hereto a political subdivision of the State of Georgia, organized and existing under and by virtue of the laws of Georgia.

3

11.

Upon information and belief, Defendant Jenkins is and was at all times material hereto a citizen of the United States, the State of Georgia, and the Southern District.

12.

Jenkins was at all times material hereto employed by the City of Wrens Police Department as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

13.

Upon information and belief, Defendant Robinson is and was at all times material hereto a citizen of the United States, the State of Georgia, and the Southern District.

14.

Robinson was at all times material hereto employed by the Jefferson County Sheriff's Office as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

15.

Upon information and belief, Defendant Hopper is and was at all times material hereto a citizen of the United States, the State of Georgia, and the Southern District.

16.

Hopper was at all times material hereto employed by both the Jefferson County Sheriff's Office and the City of Wrens Police Department as a duly

appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

17.

Upon information and belief, Defendant John Maynard is and was at all times material hereto a citizen of the United States, the State of Georgia, and the Southern District.

18.

Maynard was at all times material hereto employed by the City of Wrens Police Department as the duly appointed Police Chief and sworn officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## ANTE LITEM NOTICE

19.

Appropriate Ante Litem Notices are attached as Plaintiff's exhibit one.

## STATEMENT OF FACTS

20.

On November 10, 2021, Jevonte Romeo Lyons, a twenty-one-year-old Black male, drove a white 2017 Toyota Corolla sedan, on Highway Ga 4, as he left the city limits of Wrens, Georgia.

21.

The vehicle displayed no unusual markings and produced no loud or disturbing sound. Jevonte was the only passenger.

22.

At approximately 8:30 p.m. Jevonte was stopped and pulled over by City of Wrens Police Officer William Jenkins. Officer Jenkins was driving a marked police

vehicle, was armed, wore a dark-colored police uniform, and acting under the color of law and the authority of the City of Wrens Police Department. At the time of the stop, it was dark outside, as sunset occurred at 5:34 PM.

23.

The stop of Jevonte made by Officer Jenkins was illegal and violative of the Fourteenth Amendment rights guaranteed by the U. S. Constitution, 42 U.S.C. § 1983, and was in violation of Georgia law regarding a Traffic Speed Operation utilizing Lidar Radar Devices pursuant to O.C.G.A. §40-14-7.

24.

What Jevonte couldn't have known at the time of his stop by the WPD was that Wrens, Georgia, was recognized nationally for its speed traps and the infamous speed trap was at the very location on Highway GA 4 where Jevonte was stopped.

25.

Jevonte was also unaware that the Wrens Police Department has a history of arresting disproportionate numbers of Black citizens.

26.

A second WPD Officer, Glenn Edwards, who was also driving a marked police vehicle, was armed and dressed in dark-colored police uniform, and was acting under the color of law and the authority of the WPD, arrived at the scene of the illegal stop of Jevonte, immediately went to the passenger side of the Toyota, and began to peer into the front and back seat of the vehicle.

27.

It appears from the actions of Officers Jenkins and Officer Edwards that Jevonte had been profiled as a possible drug dealer because he was a young, Black

male, driving alone in a car with a visible tag from an urban Georgia County: Richmond County.

### 28.

Despite the illegality of the stop, young Jevonte complied with the request of the officer to produce his driver's license and registration. Officer Jenkins moved to the rear of Jevonte's car. Officer Jenkins claims that he checked with Jefferson County Dispatch, who informed him that Jevonte had an active warrant pending against him which required his arrest. Officer Jenkins demanded Jevonte get out of his car.

### 29.

Jefferson County Dispatch records show that no request to check the criminal history of Jevonte was made by Officer Jenkins at this time. Rather, the records reflect that a request was made by an officer (designated in the reports as WR403) to check Jevonte's criminal history, but not until 12:27 AM on November 11, 2021. The check did not reveal the existence of an active warrant.

### 30.

The statement made to Jevonte that there was an active warrant issued for his arrest was a ruse concocted by Officers Jenkins and Edwards which was designed to persuade him to exit his vehicle so the police officers could search for the illegal drugs they hoped to locate inside the vehicle.

### 31.

Jevonte tried to explain to the Officers that no warrant existed. Jevonte was well aware of this fact because, as a young Black man, he had been recently stopped twice by law enforcement officials in Georgia and South Carolina for no legal reason. Both stops resulted in his release without an arrest.

32.

Because of the aggressive and deceitful nature of the illegal and unconstitutional activities conducted by Officers Jenkins and Edwards; because this incident occurred not long after the brutal public death of George Floyd at the hands of a police officer: because Jevonte was alone in the dark with two aggressive officers; and because he realized the conduct of the officers was illegal, Jevonte let the officers know that he "was afraid" of them.

33.

Every person has the right to resist an illegal arrest whether attempted by an officer or by a private individual, and in resisting may use as much force as is necessary for the purposes and no more. *Calmer v State, 309 Ga.368 (2020)*. Because of the danger presented by Officers Jenkins and Officer Edwards, Jevonte exercised his right to resist this illegal arrest by driving his car away and headed back to his home in Augusta, which was approximately thirty-one miles away. Jevonte was not violent and displayed no weapons. He simply drove his car away from the attempted illegal arrest by the Defendant Officers.

34.

Because the WPD, the City of Wrens, The Jefferson County Sherrif's Department, Wrens Police Chief John Maynard, and Jefferson County Government, did not maintain a meaningfully updated officer pursuit policy, and because the Defendants failed to properly recruit, train, and instruct its officers; because of the intentional conduct of the Defendant Officers (such conduct being the attempt to arrest and detain Jevonte Lyons in clear violation of the Fourth and Fourteenth Amendments and Georgia law) Jevonte resisted this illegal arrest and drove his car away from the Defendants. The Defendant Officers began another unconstitutional

activity— in that there was no warrant authorizing the officers to take Jevonte into custody and no right to pursue him.

35.

The Defendant Officers, as Jevonte drove north on Highway GA 4 at approximately 8:32 PM, decided to physically stop the vehicle driven by Jevonte.

36.

On information and belief, the decision by the Defendant Officers to violate the due process rights of Jevonte and to illegally capture him was communicated by private telephone, text message, or alternate police radio channels, that Defendants have not revealed through Open Records Requests and they have failed to include details of such communications in any police reports or summaries.

37.

The Defendant Officers were not properly trained to execute appropriate police pursuit procedures. Also, the City of Wrens, the WPD, the Jefferson County Sheriff's Office, and Jefferson County, failed to implement any police pursuit policy, or, in the alternative, the policy put into place was inadequate or the policy was ignored due to lack of proper training.

38.

The pursuit by the Defendant Officers violated a basic requirement of a lawful pursuit, as the officers never announced to Jefferson County Dispatch the nature of the violation against Jevonte or the reason for the pursuit.

39.

During the pursuit, one of the four officers utilized a technique called "Ramming," which is the deliberate impact of a fleeing vehicle with a police car to functionally damage or otherwise force the vehicle to stop. One of the Officers

rammed his vehicle into the driver's side of Jevonte's Toyota. The impact caused the vehicle to strike a concrete curb on GA 4 near The Western Motel located at 812 N. Main Street in Wrens, Georgia. This caused severe damage to the right tires of Jevonte's vehicle. Jevonte did not stop, as he was running for his life.

40.

The Defendant Officers demonstrated frustration as they reported to Jefferson County Dispatch at 8:35 PM, "the car is severely damaged.  I don't think it's going to make it much further."

41.

At approximately 8:38 PM, the four officers decided to utilize what is termed a Pursuit Intervention Technique (PIT), a low-speed maneuver designed to cause a vehicle to spin out and terminate the pursuit. One of the officers who has yet to be identified, impacted the driver's side rear panel of Jevonte's vehicle causing it to spin or flip over.

42.

Once Jevonte's vehicle stopped spinning or rolling over, the vehicle was approached by the four officers who had their firearms drawn, reflecting their elevated hostility and contempt for Jevonte, angrily shouting "Show me your hands! Show me your Hands!"

43.

As the four officers approached Jevonte, one of the officers, yet unidentified, shot Jevonte in the head. At the time of the shooting, Jevonte was not being aggressive or violent towards the officers.

44.

Once Jevonte was shot, the officers attempted to cover-up what had just occurred because they were aware their body-worn cameras would record this portion of the incident.

45.

The officers began to shout "He's got the gun in his mouth. He just blew his brains out!" This statement by the officers was not supported by the physical evidence on Jevonte's body.

46.

Consistent with the cover-up, the officers stated to Jefferson County Dispatch that they had found Jevonte in the car, injured from a self-inflicted wound.

47.

The crime scene revealed several circumstances that were inconsistent with the self-inflicted gunshot wound story told by the Defendant Officers. The major inconsistencies involve two immutable facts: the trajectory, including the entrance and exit wound from the bullet used to kill Jevonte; and, the absence of gunshot residue (GSR) at or around the fatal wound.

48.

Jevonte's body was taken from the scene of this brutal crime to the Augusta Medical Center, where he was examined by Dr. Andrew Jackson. The examination revealed two main facts: (1) the bullet fired into the head of Jevonte was not fired with the gun in his mouth; and (2) the bullet entered the right side of his head and exited in an upward angle from the left side of his head. Thus, the statement made by the Officers that the gun was in Jevonte's mouth when it was fired is patently untrue.

49.

The examination at the hospital also exposed a more significant and troubling finding. Dr. Jackson was unable to detect any GSR on or near the entrance wound. The transfer of GSR particles from a fired gun to the skin of a shooting victim is a standard measure used by investigators to determine where a gun was fired from. A close-range or "press contact" firing of a weapon in self-inflicted gunshot wound cases, will leave a deposit of GSR particles on the skin. If no GSR particles are found on the skin, the shot was necessarily fired from a range that would eliminate a self-inflicted wound.

50.

The autopsy was conducted by Dr. Rochelle A. Simon, Associate Medical Examiner, Division of Forensic Sciences, Georgia Bureau of Investigation, on November 15, 2021.

51.

Dr. Simon reported that Jevonte died from a single shot to the head.  She described the gunshot wound to the head in the following manner:

l.   GUNSHOT WOUND OF HEAD
      A. Entrance right frontal scalp: no evidence of close/immediate-range discharge of a firearm

      B. Injury to, right parietal bone, dura, right and left frontoparietal lobes, dura, left parietal bone.
      C. Recovered fragments of deformed jacketed bullet from along wound path.
      D. Direction right to left.

52.

The medical findings of Dr. Simon are inconsistent with the statements of the Defendant Officers. The physical evidence shows that Jevonte was shot from a distance, not— as the Officers claim— from a self-inflicted gunshot wound.

53.

Moreover, Dr. Simon's findings definitively show the bullet fired into Jevonte's head was not fired at close range. This means the handgun was fired from a greater distance than would have been possible for a self-inflicted gunshot.

54.

The findings of Dr. Jackson at the Augusta Hospital, combined with the scientific findings of Dr. Simone, should have immediately prompted Chief Maynard, the WPD, the City of Wrens, the Jefferson County Sheriff's Office, and Jefferson County to immediately launch investigations into the death of Jevonte Lyons. Rather than act upon the evidence, the Defendants chose to take no action at all.

55.

The City of Wrens Police Department is a troubled agency. Even though the department has only seven to nine members and polices a city of only 2,100, the department has a history of questionable leadership and criminal conduct. This has led to poor recruitment and selection of officers. The department has also failed to provide adequate policies and procedures for officers and suffers from the lack of a consistent training program for the members of the force.

56.

During the four years preceding November 10, 2021, the WPD has been headed by four police chiefs – Gary McCord, Jim Votax, Jamey Kitchens, and John Maynard.

57.

The troubled nature of the department is illustrated by the resignation of Police Chief Gary McCord in November 2017. McCord resigned after being charged with Conspiracy to submit a false training record to Georgia POST. This criminal charge reflects a critical lack of basic police standards.

58.

Defendant John Maynard had only served as the Police Chief for thirty-seven days when his department was responsible for the death of Jevonte Lyons. He inherited a department that was historically untrained and rife with criminal conduct.

59.

In addition to criminal charges against Chief McCord , Wrens Officer Brett Chapman Smith was charged with three counts of obscene conduct with a Child; and two counts of internet contact with a child on December 19, 2015.

60.

On October 23, 2017, Wrens Officer Shane Barrow resigned after a complaint was filed by female citizen alleging he made unwanted sexual advances while in uniform and on duty.

61.

Wrens Police Officer Matthew Morin resigned on May 17, 2018, after allegations he had mishandled a department issued taser and filed a false report concerning its deployment.

62.

On June 19, 2020, then Chief Jamey Kitchens called in the GBI to investigate three unnamed officers for inappropriate use of force involving a taser against a 15-

14

year-old girl. Those officers may be Defendants in this case or involved in this investigation.

63.

The National Motorist Association, a 501 nonprofit advocacy organization created in 1982, has designated the City of Wren as a "Speed Trap". The organization particularly points out GA 4, which is the same street Jevonte was arrested on as an example of a speed trap in Wrens. The speed limit is suddenly reduced by 10 MPH when leaving the City of Wrens. This area is patrolled by Wrens officers who then arrest the unsuspecting drivers for speeding. According to the organization, the speed trap is a revenue collecting device for the City of Wrens.

64.

The treatment of Black citizens like Jevonte Lyons by the City of Wrens Police Department is an additional reason his vehicle was stopped by the WPD. Unconstitutional treatment of Black citizens is reported by Police Scorecard, the first nationwide evaluation of policing in the United States. The Scorecard calculates levels of police violence, accountability, racial bias, and other policy outcomes, of 16,000 municipal and county law enforcement agencies, covering 100% of the U.S. population.

65.

Scorecard reports that, although Black people comprise only 59% of the population of Wrens, Black people made up 84% of the arrests. Scorecard also reports that the Wrens police department did not release information about racial complaints made by citizens against the police department, making it difficult to score the department in the area of racial bias.

66.

The City of Wrens was fully aware of the lack of stable leadership, lack of training and procedures, and the widespread criminal conduct in the police department and took no substantial steps for improvement. The City of Wrens was aware of the speed trap operated by the police department on GA 4 and profited from its operation. This was the same speed trap that Jevonte stumbled into on November 10, 2021. The City of Wrens was aware of the unequal treatment of Black citizens by the Wrens Police Department and took no steps to correct this unconstitutional treatment. The City was also aware of the shooting death of Jevonte Lyons and that the shooting was based upon longstanding policies of the police department and the City of Wrens.

67.

The relationship between the Jefferson County Sheriff's Department and the City of Wrens police department was such that they were effectively one department. Defendant Sargeant Christopher Robinson worked full-time for the Sheriff's Department and joined in the pursuit of Jevonte and served as the supervisor of the police operation. Defendant Josh Hopper was a full-time member of the Sheriff's department but also served as a  part-time officer with the Wrens Police Department. The two departments used the same radio communications and dispatch.

68.

Because of the close working relationships between the Wrens Police Department and Jefferson County Sheriff's Office, the Sheriff's Office knew or should  have known about the lack of training, lack of adequate police policies and procedures, widespread criminal conduct, the operations of the speed traps, and the unconstitutional treatment of Black citizens. Despite this knowledge, the Sheriff's Office adopted the  conduct  and  activities  of  the  Wren  Police  Department,

particularly with respect to the illegal pursuit and shooting of Jevonte Lyons, and the attempt to cover up the facts of the incident .

## **FAILURE TO INVESTIGATE AND COVERUP**

69.

The Georgia Bureau of Investigations (GBI) was called in by a Wrens Police Official identified by Jefferson County Dispatch as WR1. Plaintiff reasonably believes WR1 was Wrens Police Chief  John Maynard.

70.

Jefferson County Dispatch records show that at 8:36 PM, Chief Maynard notified dispatch that he was on the way to " the scene." That he was headed to the scene at  8:36 PM is unusual as the so-called rollover of Jevonte Lyon's vehicle was reported at 8:38 PM. At 8:48 PM, Chief Maynard arrived at the scene. After arriving at the scene at 10:00 PM, Chief Maynard asked a dispatcher to notify county dispatch and the GBI. Chief Maynard has not disclosed what transpired during the one-hour and twelve-minute period that caused him to notify the GBI.

71.

Why was Maynard notifying the GBI some one hour and twenty minutes after Jevonte was shot? It was clearly his responsibility to investigate the shooting along with the JCSO. The GBI assists the police in Georgia with use-of-force cases involving the police— they do not assist with citizen suicides.

72.

The Jefferson County Sheriff's Office, the Wrens Police Department, and Chief Maynard failed to thoroughly investigate the shooting death of Jevonte Lyons. The list of actions these defendants failed to immediately complete includes but is not limited to the failures listed below:

>    a.  Failure to preserve the automobile (crime scene) of Jevonte Lyons for
>    investigations of this death.

b.  Failure to perform scientific testing on the vehicle driven by Jevonte Lyons to determine whether it was impacted by the law enforcement vehicles driven by Defendants.

c.  Failure to conduct scientific testing to determine whether a gunshot was fired inside the vehicle driven by Jevonte Lyons.

d.  Failure to conduct scientific testing to determine whether a gunshot was fired from outside the vehicle driven by Jevonte Lyons.

e.  Failure to seize the firearms and weapons of the Defendant Officers to conduct scientific testing to determine whether each weapon had been recently discharged.

f.  Failure to conduct Touch DNA testing upon the Black Taurus G28 9 MM weapon, identified as the weapon that fired the bullet killing Jevonte Lyons to determine the identities of who touched this weapon.

g.  Failure to conduct scientific testing of the hands and clothing of the Defendant Officers to determine whether GSR particles could be identified upon their persons.

h.  Failure to seize the personal telephones and computers of the Defendant Officers to examine communications, texts, and emails made during this incident.

i.  Failure to take control and preserve the personal property of Jevonte Lyons. Such property would include his wallet, jewelry, and his personal cell phone.

j.  Failure to initiate a separate investigation into the conduct of the Defendant Officers particularly after learning of the lack of GSR on or about the injury to the head of Jevonte Lyons and the inconsistent assertion that Jevonte Lyons placed a weapon in his mouth and shot himself.

73.

These failures by the Wrens Police Department and the Jefferson County Sheriff's Office was at all times performed under color of law. The conduct was intentional and malicious and designed to conceal the involvement of the Defendant police officers and violated the constitutional and state rights of Jevonte Lyons.

## JEVONTE LYON'S CELLPHONE TAMPERING WITH EVIDENCE

74.

Jevonte had possession of his personal cell phone on November 10, 2021. The phone is clearly visible in the body-worn camera video recordings provided by the Defendant Officers.

75.

Plaintiff believes, based on her son's frequent use of his cell phone to record and photograph events occurring in his life, and particularly based upon his statement to the Defendant Officers that he was afraid, that her son may have recorded events on his phone that might contain incriminating video evidence against the Defendant Officers.

76.

Plaintiff and her counsel have requested return of the personal cell phone on several occasions from Defendants with no success. The GBI has stated they do not have possession of the phone. Yet, the City of Wrens and the WPD have stated in writing to Plaintiff the cell phone is in the custody of the GBI.

77.

To this date the Defendants have refused to return the personal cell phone of Jevonte Lyons. Defendants are in violation of O.C.G.A. §16-10-94 which provides:

> a.  A person commits the offence of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes , devises, prepares, or plants false evidence.

78.

Defendants tampered with evidence in this case to further conceal their responsibility for the death of Jevonte Lyons. This has further violated, insulted, humiliated, and caused pain and suffering to the mother of Jevonte Lyons, Jamie Hines.

## COUNT I - 42 U.S.C. §1983 DEPRIVATION OF FEDERALLY PROTECTED RIGHTS (FOURTH AND FOURTEENTH AMENDMENTS)

79.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

80.

At all material times, Defendant Officers acted jointly and in concert, under color of state law and within the scope of their employment.

81.

Defendant Officers violated Jevonte's Fourth Amendment rights by operating an illegal speed trap and allegedly charging him with speeding .

82.

DefendantOfficers violated Jevonte's Fourth Amendment rights by attempting to seize, stop, and search Jevonte's vehicle based upon the false contention that a valid warrant existed for his arrest.

83.

Jevonte exercised his right to resist an illegal arrest and peacefully drove his car away, heading home.

84.

Defendant Officers illegally and unconstitutionally deprived Jevonte of his federally protected rights by running his car off the road and shooting him in the head.

85.

Defendant Officers created a story claiming that Jevonte's shooting was the result of a self-inflicted wound.

86.

The City of Wrens, Jefferson County, the Jefferson County Sheriff's Department, furthered the false narrative of a self-inflicted wound and failed to take appropriate steps to independently investigate the Defendant Officers for their illegal and unconstitutional activities .

87.

Jevonte Lyons was within his rights to resist an unlawful arrest.

88.

The Fourth Amendment prohibits law enforcement officers from using unreasonable and excessive force on civilians while performing their official duties. The due process clause of the constitution prohibits government officials from acting

in a way that is arbitrary and conscience-shocking in a constitutional sense, and in a manner that is intended to cause injury.

89.

At all material times, Jevonte had a clearly established right to liberty, including his right to personal safety and bodily integrity as well as protection from excessive force pursuant to the Fourth Amendment of the United States Constitution.


90.

In violation of Jevonte's rights, officers pursued his vehicle, used force to stop it, and ultimately caused the heinous death of a young man.

91.

Under the totality of the circumstances, Defendant Officers' actions were objectively unreasonable and constituted excessive force.

92.

These acts deprived Jevonte of rights secured by the Fourth and Fourteenth Amendments of the United States Constitution.

93.

As a result, Jevonte suffered damages for the physical, mental, emotional injury and pain, fright and shock, mental anguish, humiliation, and embarrassment he endured.

94.

The Defendant City's and County's policies, procedures, protocols, and customs, whether written, unwritten, or de facto, are jointly responsible for this unlawful use of excessive force and led to the death of Jevonte Lyons

## COUNT II - 42 U.S.C. § 1983 MONELL LIABILITY - AGAINST MUNICIPALITY *(Against City of Wrens)*

95.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

96.

The city of Wrens and Jefferson County ignored the criminal conduct, lack of leadership, and lack of adequate policies and procedures displayed by the city of Wrens police department and the Jefferson County Sheriff's Office.

97.

The City of Wrens, with the cooperation of the Jefferson County Sheriff's department, operated a nationally recognized illegal speed trap that was responsible for stopping of Jevonte's vehicle.

98.

The City of Wrens and Jefferson County received a financial benefit from the operation of the speed trap and ignored its illegality.

99.

The City of Wrens Police Department between 2017 and 2020 had at least five officers arrested for allegations related to criminal conduct. The City of Wrens and Jefferson County took no substantial actions to change policies or procedures to prevent such criminal activity.

100.

Eighty-four percent of the arrests made by the City of Wrens Police were of Black citizens, despite Black citizens comprising only 59% of the population.

101.

The City of Wrens and Jefferson County took no actions to remedy this egregious disparate treatment.

102.

The City of Wrens has refused to review complaints of Black citizens made against the City of Wrens Police Department which has encouraged illegal and unconstitutional activities on by police officers.

103.

The failure of the City of Wrens and Jefferson County to enact appropriate policies, procedures, and customs directly lead to the unconstitutional and illegal conduct resulting in the death of Jevonte Lyons.

## **COUNT III - 42 U.S.C. § 1983 - CANTON LIABILITY *(Against City of Wrens)***

104.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

105.

The lack of training in the Wrens Police Department is horrific.

106.

At the time of the shooting, Officer Hopper had only been with the police department for a week and was already equipped with a firearm and exercising police authority on the streets.

107.

Officer William Jenkins had briefly served as an intern with the Richmond County sheriff's department and was immediately placed on the streets managing the traffic operations.

108.

The execution of the arrest and pursuit of Jevonte Lyons clearly demonstrated a lack of proper police training.

109.

The police department changed chiefs four times within four years.

110.

The City of Wrens and Jefferson County failed to take actions to ensure that the WPD was properly led and trained.

111.

Because of the constant change in leadership positions, organization and discipline within the police department was constitutionally lacking.

## COUNT IV - 42 U.S.C. §1983 -MONELL LIABILITY

### *(Against Jefferson County)*

112.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

113.

The Chairperson of the Commission, the Board of Commission, and the Sheriff had final policymaking authority regarding establishing written policies and training programs governing the conduct of JCSO officers performing policing functions on behalf of the County.

114.

The poorly written policies and training established and/or approved by the mayor, the City Council, and the Police Chief constitute the official policy of the County and were the principle moving forces behind and caused the injuries and death of Jevonte Lyons.

115.

The City's mayor and other policymakers had knowledge of JCSO's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

116.

On November 10, 2021, the City's Chairperson of the Commission and other policymakers made a deliberate and conscious decision to disregard the known risk of harm that would result from JCSO's unconstitutional patterns and practices and was deliberately indifferent to and tacitly authorized the same.

117.

As a direct and proximate result of the acts and omissions described herein, Jevonte Lyons suffered compensatory and special damages as defined under federal and state law and in an amount to be determined by jury.

118.

Plaintiff is entitled to recovery of costs, including attorney's fees, under 42 U.S.C. §1983.

119.

As a result of these wrongful acts and omissions, the Plaintiffs have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

## COUNT V- 42 U.S.C. § 1983 CANTON LIABILITY

### *(Against Jefferson County)*

120.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

121.

Jefferson County failed to properly train or modify its training to its Officers, including but not limited to, matters related to the operation of speed traps, police vehicle pursuits of suspects, and proper use of force upon the arrest of a suspect.

122.

Jefferson County was deliberately indifferent and exhibited reckless disregard with respect to the violation of constitutuional rights.

123.

Jefferson County's failure to train and/or to modify training constituted the official policy, practices, or customs.

124.

As a direct and proximate result of Jefferson County's acts and omissions Plaintiff suffered compensatory and special damages as defined under federal state law and in an amount to be determined by jury.

125.

Plaintiff is entitled to recovery of costs, including reasonable attorney's fees, under 42 U.S.C. §1988.

126.

As a direct and proximate result of these wrongful acts and omissions, Plaintiff Jamie Hines has suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance , advice , assistance , protection, and support in an amount to be determined by jury.


## COUNT VI - WRONGFUL DEATH UNDER GEORGIA LAW
### *(AGAINST ALL DEFENDANTS)*

127.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

128.

At all times material, defendant officers were acting under color of state law.

129.

Jevonte Lyons was detained as a result of an illegal speed trap in the City of Wrens.

130.

Defendant Officers attempted to seize Jevonte unconstitutionally by inventing a story that he had an outstanding warrant.

131.

The story was a ruse to get Jevonte out of his vehicle, so that it could be searched for drugs that officers assumed he would have in his possession.

132.

Lyons had no valid warrant for his arrest.

133.

Jevonte exercised his right to resist an illegal arrest, and peacefully drove his car away, heading home to Augusta.

134.

Jevonte was pursued and shot by an unidentified Wrens or Jefferson County Officer.

135.

Pursuant to OCGA §51-4-2 Jamie Hines has a right to recover for the wrongful death of Jevonte Lyons.

## COUNT VII - TAMPERING WITH EVIDENCE AGAINST ALL DEFENDANTS

136.

Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

### 137.

At all material times, Defendant Officers were acting under color of law and within the scope of their employment.

### 138.

The City of Wrens Police Department or the Jefferson County Sheriff's Department have refused to turn over the personal cell phone of Jevonte Lyons recovered from the scene contrary to OCGA § 16-10-94.

### 139.

Upon information and belief, Jevonte recorded evidence on the phone that would support Plaintiff's allegations against the Defendant Officers for his death.

### 140.

Contrary to the laws of this state, Defendants have knowingly destroyed or concealed the phone and the evidence that it contains.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jamie Hines, as administrator of the estate of Jevonte Romeo Lyons and as surviving parent and heir to the estate of Jevonte Romeo Lyons, prays for judgement against Defendants as follows:

### (a)

As to Count I, a monetary judgment against Defendants Jenkins, Robinson, Hopper, Edwards,  Maynard, City of Wrens Police Department, and the Jefferson County Sheriff's Office for compensatory, special, and punitive damages together with costs and disbursements, including reasonable attorneys' fees and prejudgment interest in an amount to be determined at trial.

(b)

As to Count II, a monetary judgment against Defendant City of Wrens for compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees, under 42 U.S.C. §1988, and prejudgment interest.

(c)

As to Count III, a money judgment against Defendant City of Wrens for compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees under U.S.C. §1988, and prejudgment interest.

(d)

As to Count IV, a monetary judgment against the Defendant Jefferson County for compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees under U.S.C.§1988, and prejudgment interest.

(e)

As to Count V, a monetary judgment against Jefferson County for compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees under U.S.C. §1988, and prejudgment interest.

(f)

As to count VI, a monetary judgment against Defendants, Jenkins, Robinson, Hopper, Edwards, Maynard, City of Wrens Police Department, Jefferson County Sheriff's Office, City of Wren's, Jefferson County for the Wrongful Death of

Jevonte Lyons, including and compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees under O.C.G.A. §51-4-2 and prejudgment interest.


(g)

As to Count VII, a monetary judgment against all defendants for Tampering with Evidence for refusing to provide and/or return the personal cell phone of Jevonte Lyons for compensatory and special damages in an amount to be determined at trial together with costs and disbursements, including reasonable attorney's fees.

(f)

The naming of a court monitor work with the Defendants to implement improvements in their law enforcement system.

Dated November 10, 2023.


/s/ Noah Green

Noah Green
Georgia Bar No. 468138
Henefeld & Green P.C.
3017 Bolling Way N.E.
Suite 129
Atlanta, Georgia 30305
P: (404) 841-1275
E: ngreen@henefeldgreen.com


/s/ Paul Howard, Jr.

Paul Howard, Jr. (Pro Hac Vice)
Georgia Bar No. 371088
The Paul Howard Law Firm
920 Dannon View SW
Suite 3202
Atlanta. Georgia 30331

P: (404) 855-6263
E: paul@thepaulhowardlawfirm.com